UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICKI WEINKAUF,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | No. CV-07-0071-AMJ<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 14) and Defendant's Motion for Summary Judgment (Ct. Rec. 18). video conference on October 23, 2007. Attorney James T. Solan represents Plaintiff; Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security ("Commissioner"). On September 17, 2007, Plaintiff filed a reply brief. (Ct. Rec. 20.) The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 13.) The court heard oral argument by video conference on October 23, 2007. Based upon the administrative record and the briefs filed by the parties, and oral argument, the court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14) and **REMANDS** the matter to the Commissioner for further proceedings. Defendant's Motion for Summary Judgment is **DENIED**. (Ct. Rec. 18.)

## SUMMARY OF ERRORS DETERMINED BY THE COURT

(1) The ALJ cited the clinical findings of three doctors who apparently had no involvement in this case: Drs. Laohaprasit, Oh, and Lambertson. It is difficult to tell what effect, if any, this error had on the ALJ's decision.

(2) The ALJ erred by failing to properly credit various opinions expressed by Dr. Stephens, a treating physician. While those opinions were somewhat contradicted by other evidence, the ALJ did not set forth specific, legitimate reasons for rejecting them.

(3) The ALJ erred in rejecting the credibility of plaintiff's pain complaints because he failed to give clear and convincing reasons for doing so.

(4) The ALJ erred in rejecting lay evidence from plaintiff's husband. Because the ALJ rejected that evidence primarily because he rejected the credibility of plaintiff's pain complaints, the ALJ must reassess the rejection of the lay evidence.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on September 11, 2002, alleging onset as of June 10, 2002, due to a neck injury and surgery. (Tr. 16, 92, 114.) The applications were denied initially and on reconsideration. (Tr. 45-48, 50-52.) Administrative Law Judge ("ALJ") R. J. Payne held hearings on January 13, 2005, and May 6, 2005. (Tr. 357-409, 410-431.) Plaintiff, her spouse, medical expert Daniel V. Girzadas, M.D., and vocational expert Deborah Lapoint testified. The ALJ issued a decision on September 8, 2005, finding that Plaintiff was not disabled. (Tr. 15-34.) The Appeals Council denied Plaintiff's request for review on January 19, 2007. (Tr. 6-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of both Plaintiff and the Commissioner, and will only be summarized here. Plaintiff was 58 years old on the date of the decision. (Tr. 92.) She has a high school education and has worked as a medical secretary, receptionist, file clerk, sandwich maker, and kitchen helper. (Tr. 120, 383, 385-391, 414-415.) Plaintiff alleges that since her disability onset date of June 10, 2002, she has been unable to work due to a neck injury and subsequent surgery. (Tr. 16, 92,114.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activity. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work he has performed in the past. If plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national

economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court

- 4 -

1  may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v.*
2  *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial
3  evidence will still be set aside if the proper legal standards were not applied in weighing the
4  evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d
5  432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative
6  findings, or if there is conflicting evidence that will support a finding of either disability or
7  nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226,
8  1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

As a preliminary matter, the ALJ noted that plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through September 8, 2005. (Tr. 16.) The claimant was therefore required to establish disability prior to this date.  The ALJ found at step one that plaintiff made unsuccessful attempts to work which do not rise to the level of substantial gainful activity. (Tr. 16.)  At steps two and three, the ALJ determined that Plaintiff suffers from the severe impairments of mild myofascial pain syndrome and status post fusion at C4-6, impairments that are severe, but not severe enough to meet or medically equal one of the Listings impairments. (Tr. 24.)  The ALJ found Plaintiff's testimony regarding her limitations not fully credible and found that she is able to perform a wide range of work at the light level of exertion.  (Tr. 28-31.)  At step four, with the assistance of a vocational expert, the ALJ concluded that Plaintiff is able to perform her past relevant work as a medical secretary, receptionist, and file clerk.  (Tr. 32.)  Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 32.)   Alternatively, the ALJ found at step five that there are other jobs in the local and national economy Plaintiff can perform such as clerk (general, appointment, and order) and administrative assistant.  (Tr. 33.)

## ISSUES

The parties agree that the ALJ erred by citing the clinical findings of three physicians who apparently had no involvement in this case. (Ct. Rec. 15 at 10, Ct. Rec. 19 at 13, referring to Tr. 29-30.)  The Commissioner maintains that the error is harmless because the statements relate "to the rejection of a chiropractic evaluation apparently in another case and not to his rejection of

- 5 -

Plaintiff's subjective complaints."[1] (Ct. Rec. 19 at 13.) The court is unable to ascertain what weight, if any, the ALJ gave to these findings. For example, in rejecting the opinion of the treating physician, the ALJ said it "departs substantially from the rest of the evidence of record." (Tr. 30.) It is not at all clear whether "the rest of the evidence of record" included the reports of the three doctors who were not involved in plaintiff's case in any way. Accordingly, the error is not deemed harmless.

Plaintiff contends that the ALJ erred in other respects as a matter of law. Specifically, she argues that the ALJ erred by rejecting the opinions of treating and testifying physicians, in evaluating plaintiff's credibility, and in assessing the credibility of lay witness evidence. Plaintiff argues that if the ALJ properly credited this evidence, she would be found disabled. (Ct. Rec. 15 at 6-16, Ct. Rec. 20 at 15.)

The Commissioner opposes the Plaintiff's motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 19 at 19.)

## **DISCUSSION**

**A.  Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F. 2d 341, 345 (9th Cir. 1991).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821,

---

[1] An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala,* 60 F. 3d 1428, 1436 n.9 (9th Cir. 1995). Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F. 2d 1127, 1131 (9th Cir. 1991).

839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a non-examining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*,  66 F.3d 179, 184 (9th Cir. 1995).

<u>1. Treating Physician Stephens</u>

Plaintiff alleges that the ALJ erred when he weighed the medical evidence by failing to properly credit the opinion of her treating physician, Michael Stephens, M.D.  (Ct. Rec. 15 at 11-14.)  The Commissioner responds that the ALJ properly weighed the medical evidence.  (Ct. Rec. 19 at 14-17.)  The parties correctly acknowledge that Dr. Stephens's opinions are contradicted to an extent by examining physician Diane Rubin, M.D. (Tr. 266-269), and by the IME examining physicians (Tr. 332-338).  To reject a treating physician's opinion which is contradicted by other evidence, the ALJ must set forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  *See Flaten v. Secretary of Health and Human Serv*., 44 F. 3d at 1463.

By way of medical background, plaintiff suffered an injury to her neck in 1991 while

surfing. (Tr. 190, 192.) Thereafter, plaintiff described suffering significant headaches for 16 months. (Tr. 191.) In September of 1997, John Hurley, M.D., indicated that plaintiff underwent prolotherapy, chiropractic care, and physical therapy. She continued to work full time, bowl weekly, and exercise regularly. (Tr. 190.) He recommended EMG studies and an MRI of plaintiff's cervical spine. (Tr. 192.) Plaintiff elected not to undergo EMG testing. (Tr. 193.) After reviewing the MRI on November 5, 1997, William Bronson, M.D., opined that plaintiff has no evidence of stenosis, discs are intact, and there is "no real degenerative disc disease." (Tr. 194.) Flexion/extension views showed hypermobility at multiple levels, C4-5, C5-6 and C6-7, with a slight forward slippage in flexion at each level of 1-2 mm, with no gross instability. (Tr. 194.) Dr. Bronson opined that

> "[o]verall it is a tough problem. I think that her pain is likely due to a chronic ligamentous injury at multiple levels in her neck. Unfortunately I do not think there are any indications for surgical intervention. She does not fit the criteria for definitive instability and surgery would be unpredictable at best."

(Tr. 194.) Dr. Bronson recommended continued conservative treatment and opined that plaintiff may benefit from a pain consultation. (Tr. 194.) On May 6, 1999, plaintiff was seen in a pain management clinic by J. Thomas Grissom, M.D. (Tr. 195-197.) Dr. Grissom noted that past x-rays revealed a spinous process fracture that had gone on to non-union with an ossicle within the interspinous ligament between C6 and C7. (Tr. 195.) Plaintiff's best intervention "has been to remain as active as possible." (Tr. 195.) Dr. Grissom recommended use of a TENS unit and prescribed an antidepressant. (Tr. 196.) On November 24, 1999, neurosurgeon John Demakas, M.D., diagnosed probable chronic pain disorder secondary to chronic cervical pain following the 1991 neck injury, opining that there are "a paucity of physical findings here but plain x-rays would certainly support a chronic pain picture." (Tr. 210.) By January 26, 2000, plaintiff had tried acupuncture but did not find it helpful. (Tr. 205.) She began receiving median branch blocks from William Weigel, M.D., which were partially successful in controlling plaintiff's pain. (Tr. 207-209.)

On February 26, 2001, Plaintiff saw Michael Stephens, M.D. (Tr. 239.) Dr. Stephens diagnosed left neck swelling and mass, left shoulder tendonitis, and probable right carpal tunnel syndrome. He recommended a nerve conduction study and continued anti-inflammatory

- 8 -

medication. (Tr. 239.) Thereafter, plaintiff was seen by physician's assistants in Dr. Stephens's office on four occasions: for joint pain in her right finger aggravated by bowling a lot; chronic neck pain, chronic neck pain causing her to feel "really down" but noted to be working four ten hour shifts, and continued neck pain. (Tr. 240-244.)

On December 18, 2001, Jeffrey Larson, M.D., performed surgery to correct cervical spondylosis at C4-5 and C5-6. (Tr. 213-215.) This consisted of an anterior fusion from C4 to C6, with an anterior plate. (Tr. 362.) Plaintiff was then turned over and Dr. Larson performed a posterior fusion at C4 and C6, and with pedicle screws and rods fixed the posterior elements. (Tr. 362.) On February 7, 2002, Jeanne Nokes, PA-C for Dr. Larson, notes that plaintiff has been back to work for 4 and a half weeks.[2] (Tr. 219.)

The ALJ notes that records from Dr. Stephens's office by Tod Fleming, PA-C, on July 18, 2002, indicate that surgery took care of plaintiff's neck complaints completely. (Tr. 26, referring to Tr. 247.) The ALJ also notes that by September 4, 2002, Plaintiff saw Dr. Stephens for continued and recurrent right neck and upper extremity pain. (Tr. 26, referring to Tr. 248.) Dr. Stephens noted that plaintiff was basically trying to work, was very teary, as well as very tender over the hips, the musculature of the shoulder and the upper extremities bilaterally. (Tr. 248.) On October 23, 2002, plaintiff reported more trouble with her neck and sinuses and increased headaches. (Tr. 248.) Dr. Stephens opined that the headaches are more likely related to chronic neck pain and muscle contraction than anything else. He referred plaintiff back to Dr. Larson to reevaluate plaintiff's cervical fusion. (Tr. 248.) Results of a cervical spine film taken a week later show "stable appearance to the anterior and posterior fusion from C4 though C6 since prior examination." (Tr. 253.)

Plaintiff saw J. Robert Clark, M.D., for neurological follow up on November 8, 2002. (Tr. 263-264.) She described anxiety and headaches lasting up to two days. Plaintiff experienced three of these intense headaches in the past two months. (Tr. 263.) Dr. Clark assessed episodic headaches with some migraine and prescribed effexor. (Tr. 264.) Office notes by Mr. Fleming on June 24, 2003, indicate that plaintiff's migraine is controlled nicely with frova (Tr. 320) and on

---

[2]The ALJ mistakenly refers to the date as January 7, 2002. (Tr. 19.)

January 30, 2004, heavy lifting during an unsuccessful work attempt aggravated plaintiff's neck and back. (Tr. 321.) On April 1, 2004, Dr. Stephens opined that plaintiff "should not go back to this job in the future. She is going to need to retire from active work life." (Tr. 322.) On April 28, 2004, Dr. Stephens opined that, because of her significant past pain, "I do not think she will be able to do work of any kind in the future." (Tr. 322.) On June 2, 2004, Dr. Stephens noted "I think [plaintiff] is going to have a hard time doing any job but we do not have a lot of objective findings, mostly just pain complaints from [plaintiff]." (Tr. 323.) Almost three months later, on August 31, 2004, Dr. Stephens indicated he signed a form indicating that plaintiff could do sedentary work, but plaintiff "really does not feel she can work." (Tr. 326.) He noted that if plaintiff feels she cannot work, "that is probably the case." (Tr. 326.)

Dr. Stephens had treated Plaintiff for about six years when he opined on September 13, 2004, that "work to any substantial degree will no longer be an option for her." (Tr. 311.) The ALJ gave Dr. Stephens's opinion little weight because: (1) it was premised to a large extent on Plaintiff's unreliable subjective complaints; (2) it departed substantially from the rest of the evidence, including the opinions of Dr. Rubin and the IME physicians; (3) Dr. Stephens's prescribed course of treatment was inconsistent with the treatment expected if Plaintiff was disabled. The ALJ cites referral for further testing to ascertain the cause of plaintiff's pain, and referral to a rheumatologist, as expected courses of treatment if plaintiff were disabled; and (4) Dr. Stephens acknowledged that there were few objective findings. (Tr. 30.)

The ALJ's reasons for giving Dr. Stephens's opinion little weight do not meet the high standard of specific and legitimate reasons for rejecting the opinions of a treating physician. With respect to "expected treatment," no physician has opined that plaintiff would benefit from referral to a rheumatologist. No physician has opined that plaintiff should be tested further to ascertain the origin of her neck and shoulder pain. To the extent that the ALJ rejected treating physician Dr. Stephens's opinion that plaintiff was unable to work based on this lack of "expected treatment if plaintiff was disabled," the ALJ's reason expresses his own medical opinion, not based upon any medical opinion in the record, and is not legitimate.

The ALJ relied on the results of single examinations by Dr. Rubin on February 4, 2003, and by the IME physicians on December 13, 2004, to reject Dr. Stephens's opinion as departing

"substantially from the rest of the evidence," and because Dr. Rubin's opinion was based on objective findings. As outlined above, Dr. Stephens's opinion as to the chronic and intractable nature of plaintiff's neck pain is largely consistent with other medical evidence. It is also based on objective findings (the results of his numerous examinations of plaintiff over six years). Because Dr. Stephens's opinion does not depart substantially from the rest of the evidence, and is at least partly based on objective findings, the ALJ's stated reasons are not supported by substantial evidence in the record.

The ALJ also rejected Dr. Stephens's opinion because it was largely based on plaintiff's unreliable subjective complaints, as discussed more fully herein. (Tr. 30.) Taken together, the ALJ fails to present specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, Dr. Stephens.

2. Testifying Physician Girzadas

Plaintiff alleges that the ALJ did not fully analyze the medical expert's testimony, including the portions of his testimony that support Dr. Stephens's opinion. (Ct. Rec. 15 at 13-14.) Daniel Girzadas, M.D., reviewed and summarized the medical records. (Tr. 361-369.) He noted that an MRI taken on July 12, 2001, showed a mild diffuse posterior annular bulge at C5-6 since December 3, 1999, which slightly flattened the ventral surface of the spinal cord without compressing it; mild vertebral and uncovertebral spondylosis without significant spinal canal or neural foraminal stenosis are noted. (Tr. 361, referring to Tr. 252.) He noted the surgical records. (Tr. 361-362, referring to Tr. 218-232.) Dr. Girzadas observed that about one year after surgery, plaintiff was doing quite well and only occasionally had neck pain. The major problem appeared to be migraine headaches. Dr. Girzadas pointed out that recent records show Plaintiff experienced two migraines a month. (Tr. 362, referring to Tr. 250, 289.) Dr. Girzadas noted that on February 4, 2003, Dr. Rubin indicated plaintiff has cluster type headaches. Plaintiff takes prescription medication (frova) for migraine headaches. (Tr. 364.) Dr. Rubin's examination revealed full range of motion in all joints, Tinell's testing was negative bilaterally, and gait and station were normal. (Tr. 364-365.) Plaintiff reported exercising daily, including walking 45 minutes every morning, and lifting two-pound barbells in a variety of positions, with 30 repetitions in each position. (Tr. 362-363, referring to Tr. 266-267.)

With respect to Dr. Stephens's opinion in September of 2004 that Plaintiff could not work, Dr. Girzadas points out that, by self-report, Plaintiff "is an exerciser that does well with exercise" (Tr. 364) and x-rays taken post-operatively following the cervical fusion show "a solid fusion from C4 to C6 with no evident motion on examination." (Tr. 364.) Dr. Girzadas agreed with Dr. Stephens's diagnosis of myofascial pain disorder and explained that this pain is related to muscle spasms. (Tr. 368.) It is a ligamentous type of pain commonly seen after surgery. (Tr. 365.) Dr. Girzadas opined that no Listing was met or medically equaled, a finding plaintiff does not challenge. (Tr. 366.) Dr. Girzadas did not dispute that Plaintiff experiences pain. He assessed an RFC for a wide range of light and sedentary work. (Tr. 366-369.)

The ALJ does not give reasons for rejecting or accepting Dr. Girzada's opinions, including Dr. Girzadas' agreement with plaintiff's diagnosis of myofascial pain disorder and his opinion that plaintiff suffers ligament-type pain. The ALJ simply summarizes portions of Dr. Girzada's testimony and then appears to adopt without analysis Dr. Girzadas's assessed RFC. The ALJ's failure to give reasons for the assessed RFC leave the court unable to determine the basis for the assessment.

**B. Credibility Analysis**

Plaintiff alleges error in the ALJ's credibility analysis. (Ct. Rec. 15 at 5-11.) The Commissioner responds that the ALJ gave clear and convincing reasons supported by substantial evidence for finding plaintiff less than completely credible. (Ct. Rec. 19 at 6-14.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993). Factors the ALJ may

<mark>
<mark>
properly consider include claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002).

It does not appear that the ALJ gave legally sufficient reasons for determining plaintiff's credibility. The ALJ gave several reasons for finding plaintiff less than completely credible: (1) <u>The medical records from plaintiff's consulting physicians do not support Plaintiff's opinion that she is unable to perform any work activities</u>. (Tr. 25-28.) The medical records from plaintiff's treating physician, entitled to greater weight than those of consulting physicians, support the opinion that plaintiff is unable to work. Accordingly, contrary records of consulting physicians do not constitute a clear and convincing reason for finding plaintiff less than credible. (2) <u>The ALJ "weighed slightly" plaintiff's apparent lack of discomfort during the 85 minute hearing when he assessed the credibility of her allegations and determined the RFC</u>. (Tr. 28.) However, as noted in Ninth Circuit law, *Gallant v. Heckler*, 753 F. 2d 1450, 1455 (9th Cir. 1984), it is error to rely on the "sit and squirm" test; thus, to the extent the credibility findings reflect the ALJ's personal observation of Plaintiff during the hearing, those findings are error. However, such error may not render the entire decision improper. *See Morgan v. Commissioner*, 169 F. 3d 595, 600, (9th Cir. 1999) citing *Sellard v. Shalala*, 37 F. 3d 1506 (9th Cir. 1994), citing *Nyman v. Heckler*, 779 F. 2d 528, 531 (9th Cir. 1985). The ALJ's reliance on his observation of plaintiff at the hearing to assess her credibility is error. Consequently it is not a clear and convincing reason to discount her credibility. (3) <u>Treatment notes do not support plaintiff's credibility with respect to the severity and frequency of her headaches</u>. (Tr. 28.) While the ALJ is correct that treatment notes reveal that plaintiff has complained of headaches of varying frequency and severity, the treatment notes more importantly reflect that plaintiff has consistently reported debilitating headaches. The ALJ's stated reason is not supported by substantial evidence. (4) <u>Plaintiff's receipt of unemployment benefits for a year following onset is inconsistent with claimed disability</u>. (Tr. 29.) While this appears to be a valid reason supported by the record affecting credibility, it is undermined somewhat by plaintiff's subsequent unsuccessful attempts to work. This reason alone is not a clear and convincing reason for finding plaintiff less than credible. (5) <u>Plaintiff's daily activities</u>

- 13 -

are inconsistent with the degree of limitation alleged. (Tr. 29.) Prior inconsistent statements and activity levels inconsistent with claimed limitations are clear and convincing reasons for finding a claimant less than completely credible. *See Thomas*, 278 F. 3d at 958-959. But the record here does not support the ALJ's finding. The ALJ outlines Plaintiff's activities, which include moderate household tasks such as dusting, watering plants, and starting dinner. He then asserts that these activities are inconsistent with the degree of pain alleged. The court has difficulty seeing how the ALJ reaches this conclusion.

In assessing plaintiff's credibility, the ALJ notes that plaintiff drove to the hearing. (Tr. 24.) The record indicates that plaintiff's spouse drove to the hearing. (Tr. 373.) To the extent that the ALJ relied on this factor in assessing plaintiff's credibility, the ALJ erred because the record does not support the finding.

The ALJ did not give clear and convincing reasons supported by substantial evidence for his credibility determination.

**C. Lay Witness Evidence**

Plaintiff alleges that the ALJ failed to give germane reasons for rejecting the evidence provided by her spouse. (Ct. Rec. 15 at 14-15.) The Commissioner responds that the ALJ properly weighed this evidence. (Ct. Rec. 19 at 17-19.)

Plaintiff's spouse was sequestered at the first hearing in order to testify but time constraints prevented his testimony. The ALJ instructed Mr. Weinkauf to submit his testimony via affidavit. (Tr. 359, 408.) At the second hearing, Mr. Weinkauf is listed as an observer. He did not testify. (Tr. 412.) In an unsworn statement dated July 22, 2005, Mr. Weinkauf indicated that he has seen plaintiff experience more headaches, as well as neck and shoulder pain, since her surgery in 2001. (Tr. 175.) Plaintiff has experienced strong side effects from her medications, including increased anxiety and irritability with almost every new medication. (Tr. 176.) She needs rest periods throughout the day and experiences migraines. (Tr. 177.) Sitting is painful, pain decreases her energy levels, and she is no longer able to shop for groceries or do very much cooking. (Tr. 176-177.)

The ALJ gave this opinion little weight initially because he found that the medical record did not indicate medications cause plaintiff "to experience personality changes." (Tr. 30.) The

ALJ noted, however, that the record contains plaintiff's statements to her physicians that she is unable to tolerate several different medications. (Tr. 30, referring to Ex. 12F at 10, Ex. 18F, and Ex. 21F.)

The ALJ went on to give Mr. Weinkauf's statements little weight, opining that they

> "reflect descriptions of symptoms and limitations that are similar to those [plaintiff] has alleged. However, the claimant also testified that she is capable of folding clothes, starting dinner, dusting, watering plants, reading self help books or mysteries for 30 to 40 minutes a day. She sees her family often. She basically does some stretching and walking and she spends once a month helping the American Cancer Society for one hour at a time. It is also noted that this is not a sworn statement or testimony under oath and constitutes rank hearsay with secondary gain involved. As the weight of the evidence fails to document clinical abnormalities that could reasonably be expected to have produced persistent symptoms or work-related limitations consistent with the allegations of the claimant's documentary witness, it must be considered whether their reports merely constitute a recitation of the claimant's own subjective allegations that have not been accepted as fully credible in this adjudication."

(Tr. 30-31.)

Plaintiff's activities (involving relatively light exertion with frequent breaks to rest) appear consistent with the level of impairment described by her spouse. Mr. Weinkauf's statements also appear consistent with plaintiff's descriptions of her limitations. To the extent that the ALJ rejected Mr. Weinkauf's testimony as based on plaintiff's discredited complaints, the lay testimony will need to be reconsidered after plaintiff's credibility is reassessed. To the extent that the ALJ considered secondary gain, this is a factor which may be considered but is not determinative. And while Mr. Weinkauf's statement is not "testimony under oath," lay testimony may be considered even when it is hearsay. *See e.g., Sprague v. Bowen*, 812 F. 2d 1226, 1232 (9th Cir. 1987) ("Disregard of this [lay] evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." (citing 20 C.F.R. § 404.1513(e)(2)). Further, descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence. *Sprague*, 812 F. 2d at 1232 (citing *e.g., Bilby v. Schweiker*, 762 F. 2d 716, 719 n. 3 (9th Cir. 1985)). The ALJ's reasons for rejecting the lay testimony are either not germane or are unsupported by the record.

**D. Remedy**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the

- 15 -

opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F. 2d 502, 506 99th Cir. 1990); *Hammock v. Bowen*, 879 F. 2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister v. Sullivan*, 888 F. 2d 599 99th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F. 3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F. 2d 13, 15 (9th 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F. 2d 1197, 1202 (9th Cir. 1990).

In this case even if the medical opinions of Dr. Stephens are credited as true, substantial questions remain with respect to credibility. Upon further determination, but without specifically ordering a new hearing unless the ALJ deems it appropriate, the ALJ will weigh and analyze the medical opinions of Dr. Stephens and the other medical evidence, reevaluate plaintiff's and lay witness credibility and (if necessary) the VE's testimony. The court expresses no opinion as to what the ultimate outcome on remand will or should be. The fact-finder is free to give whatever weight to the evidence is deemed appropriate. *See Sample v. Schweiker*, 694 F. 2d 639, 642 (9th Cir. 1982) ("Q)uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary").

## CONCLUSION

For these reasons a remand for further proceedings is the proper remedy.

Accordingly,

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **GRANTED** and the matter is **REMANDED** pursuant to sentence four for further proceedings, which shall include a new determination by the ALJ as to whether plaintiff is entitled to an award of benefits. The court does not perceive a need for a new hearing, but leaves that issue to the discretion of the Commissioner.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 18)** is **DENIED**.

- 16 -

3. Judgment for the **Plaintiff** shall be entered.

4. Application for attorney fees may be made by separate motion.

5. The District Court Executive is directed to enter this Order, forward copies to counsel, and **CLOSE** this file.

**DATED** this 24rd day of October, 2007.

<pre>
                            s/ John Weinberg
                            JOHN WEINBERG
                     UNITED STATES MAGISTRATE JUDGE
</pre>